FILED by ___ D.C.
ELECTRONIC

Jul 20 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-20203-CR-MIDDLEBROOKS/BANDSTRA

UNITED STATES OF AMERICA,

v.

FABIAN CORRIETTE,

   Defendant.
_____/

**FABIAN CORRIETTE'S MOTION TO SUPPRESS INTERCEPTION OF WIRE COMMUNICATIONS AND MEMORANDUM OF LAW IN SUPPORT**

**COMES NOW,** the defendant, Fabian Corriette, by and through the undersigned attorney, and pursuant to 18 U.S.C. §2518, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and moves this Court to suppress any and all interceptions of wire communications and evidence derived therefrom and as grounds therefore, the defendant states as follows:

   1. On July 28, 2003, the Honorable Paul C. Huck, United States District Court Judge, signed an order authorizing the interception of wire communications regarding cellular telephone number (305) 710-7386 ( hereinafter referred to as a "wiretap warrant"). On August 28, 2003, Judge Huck signed an order authorizing the continued interception of the above telephone number. On September 29, 2003, Judge Huck signed an order authorizing the continued interception of the above telephone number.

2. In April 2004, Mr. Corriette was indicted. The government never served Mr. Corriette with an inventory as required by 18 U.S.C. §2518 (8), (d).[1] Mr. Corriette's first notification that he was an aggrieved party of a wiretap was when the government moved for his pretrial detention. Mr. Corriette pretrial incarceration is substantially and primarily based on intercepted wire communications. The government proffered to the court the contents of an intercepted wire communication in which Mr. Corriette was alleged to have been a party. The proffer was offered in support of the governments motion to have Mr. Corriette pre trial detained. The government further proffered that Mr. Corriette was intercepted on many telephone calls, most of which were drug related. The government introduced this evidence of intercepted wire communications, notwithstanding that 18 U.S.C. §2518 (9) provides, "(t)he contents of any wire... communication intercepted pursuant to this chapter [18 U.S.C. §§2510 et seq.] ... shall <u>not</u> be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in Federal or State court unless each party, not less than ten days before the trial, hearing or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved." Mr. Corriette has already been aggrieved by the government's failure to comply with the procedures set forth in 18 U.S.C. § 2518, because

---

[1] 18 U.S.C. §(8), (d) provides:
(d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of –
    (1) the fact of the entry of the order or the application;
    (2) the date of the entry and the period of authorized interception, approved or disapproved interception, or the denial of the application; and
    (3) the fact that during the period wire, oral, or electronic communications were or were not intercepted.

his pretrial incarceration is predicated upon improperly received evidence.

3. Every wiretap warrant, provides that the interception "must terminate upon attainment of the authorized objective." In this case, the wiretap warrant contains a provision that the prosecutor shall provide Judge Huck with periodic reports ten, twenty and thirty days of the intercept period "showing what progress has been made toward achievement of the authorized objective." At the time of drafting this motion, the government has not supplied the undersigned with a copy of the progress reports therefore, it is not known by the undersigned whether the progress reports were in fact submitted to the Court as ordered.

4. The grounds for the suppression of the evidence derived from the wiretap warrant which will require an evidentiary hearing, are:

(1) the government did not provide Judge Huck with legally sufficient proof that it was authorized to apply for a wiretap warrant.

(2) the probable cause was insufficient to obtain a wiretap warrant.

(3) the application for the wiretap warrant, did not adequately establish why normal investigative procedures have failed, or why normal investigative techniques were unlikely to succeed;

(3) the interception of wire communications did not promptly terminate upon attainment of the authorized objective.

(4) the government did not properly "minimize" the interception of wire communications.

## **Legal Argument**

## Standard of Review to be Applied in a
## Motion to Suppress the Interception of Wire Communications

An interception of wire communications obtained through 18 US.C. § 2510 et seq. (hereinafter referred to as "Title III") is considerably different than a traditional search warrant application. First, an interception of wire communications is a far more intrusive invasion of privacy, and not only invades the privacy of the target of the investigation, but also of other individuals who may contact the individual under investigation. Unlike an individual who is the subject of a conventional search, one who is affected by an interception of wire communications does not immediately know of the intrusion. This electronic intrusion is always secret, and may never be made known to the individual if the investigation is unfruitful. In a traditional search, the subject knows immediately that his premises are being invaded and what possessions are being seized, or shortly thereafter he is aware of the fact if it occurs at a time when he is not present at his residence.

An interception of wire communications is of a longer duration, more extensive into the privacy and affects more individuals. See *United States v. Santora, 583 F.2d 453, 462-63 n.6 (9th Cir. 1978).* The legislative history of Title III reflects there were numerous legislative attempts to restrict the interception of wire communications. One proposal before Congress would have entirely banned all types of wiretapping at both the state and federal levels, except for national security investigations. Title III was a compromise and specifically limited wiretapping. It entrusted initial authorization to the Attorney General, and then required court approval. Thirty days was set as the maximum period of the intercept, though an extension may be sought.

Evidence obtained in violation of Title III must be prohibited and cannot be lightly

considered. Because of the extensive intrusion of an interception of wire communications, the authorization and applications must be strictly construed. To ensure that there are proper investigative motives, Title III must be strictly construed in favor of the public at large, and against the applicant (government). Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

The Supreme Court has explained that "suppression is not mandated for every violation of Title III, but only if 'disclosure* of the contents of intercepted communications, or derivative evidence, would be in violation of Title III." In particular, communications are only unlawfully intercepted and suppression mandated "where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Chavez, 416 U.S. 562, 575 (1974).*

The "four corners" rule is a well-established precept of judicial review. It derives from the observation of the Supreme Court, in *Aguilar v. Texas, 378 US. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L. Ed. 2d 723 (1964),* that "it is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate*s attention"--that is, within the four corners of the warrant application. Thus, the "four corners" of an application for a wiretap warrant must establish that the government has complied with the statutory requirements, or satisfied the statutory predicate for obtaining a wiretap warrant.

**Authorization per 18 U.S.C. § 2516**

Title III provides that an interception of wire communications <u>must</u> be specifically authorized by specifically enumerated official with the United States Department of Justice:

> (1) The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of . . .(specifically enumerated offenses). 18 US.C. § 2516.

Attorney General John Ashcroft has implemented 18 U.S.C. § 2516 by designating that the Attorney General and/or certain designated officials within the Department of Justice must authorize all applications for wire interceptions. Besides the Attorney General, Deputy Attorney General and Associate Attorney General, the persons designated to authorize an interception of wire communications are the Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, any Deputy Assistant Attorney General of the Criminal Division, and any Acting Deputy Assistant Attorney General of the Criminal Division. *Attorney General Order no. 2407-2001.*

The unsealing of the original wiretap documents revealed that the application for the wiretap warrant presented to Judge Huck, did not contain proof that one of the enumerated officials authorized the application for the wiretap warrant. Judge Huck was presented Attorney General Order no. 2407-2001, which enumerated the persons authorized to approve an application for a wiretap warrant. Judge Huck was presented a photocopy, not

the original, of an authorization memorandum dated July 25, 2003 approving the interception. It was purportedly signed by "Christopher A. Wray." **The authorization memorandum was not personally signed by Christopher A. Wray, Assistant Attorney General, Criminal Division;** his signature was left blank. Under Wray's signature line is what appears to be a stamped signature in the name of Bruce C. Swartz, Deputy Assistant Attorney General indicating that he had signed the authorization memorandum for Christopher A. Wray  The memorandum was not signed by the purported author of the memorandum, Christopher A. Wray. It was not signed by anyone. Instead someone affixed the rubber stamp signature of another official.

The same scenario occurred for the August 27, 2003 memorandum and the September 26, 2003 memorandum of authorization.

In *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court held that Title III strictly limits the category of public officials who may authorize an application of the interception of wire communications to the Attorney General and Assistant Attorneys General specially designated by him. In holding that no other Justice Department official could approve wiretaps, the Court held that the government*s failure to obtain authorization for the wiretap application from one of the statutorily designated officials under 18 US.C. 2516(1) required suppression of the evidence secured by the wire interceptions. "We are confident that the provision for pre-application approval was intended to play a central role in the statutory scheme and that suppression must follow when it is shown that this statutory requirement has been ignored." *Id.416 US.* at *528, 94 S. Ct. at 1832.*

Authorization, in accord with 18 US.C. § 2516, is an essential step in obtaining a wiretap warrant. It is not some mere ministerial process. The authorization memorandum must be included as part of the application for the wiretap warrant, so the judge, as a neutral magistrate, can determine that the law enforcement official seeking the wiretap warrant has authorization to do so.

Based on the "four corners" of the application, Judge Graham could not have fulfilled his obligation, as a neutral magistrate, and concluded that United States Attorney for the Southern District of Florida had authorization to obtain a wiretap warrant. Title III is strictly construed in favor of the public at large, and against the government. Suppression is mandated where the application for the wiretap warrant fails to satisfy the statutory requirement of 18 US.C. § 2516 by informing the Judge that the wiretap has been authorized as required by law.

In *United States v. Laff*, 365 F. Supp. 737 (S.D. Fla. 1973), this Court dealt with the situation of a third-party signing or initialing a wiretap authorization memorandum. The government's authorization memorandum bore the Attorney General's initials. The Attorney General's executive assistant placed the Attorney General's initials on the authorization memorandum. The executive assistant claimed that he had the Attorney General's oral authorization to sign his initials. This Court, in rejecting that argument, wrote:

> **The fact that (the executive assistant) testified that he acted in the instant case under oral instructions by (the Attorney General) after a long-distance telephone conference with the Attorney General, could not serve to make proper an authorization any more than could a judge's oral instructions to the clerk of the court to sign his name to an Interception Order make that a valid order.** *Id at 740.* (emphasis added)

This Court in *Laff* specifically rejected the concept of an unauthorized person signing

for an authorized person. The motion to suppress the wiretap warrant should be granted, without even the necessity of an evidentiary hearing.

The courts have disapproved a third party affixing a substitute signature for the attorney who was supposed to sign a document. In a case presently pending before this Court, this Court has disallowed a paralegal signing his employing attorney*s name after he was authorized and directed to do so. In that case, the employing attorney approved a pleading that was to be filed in a civil case. The pleading needed to be filed. Because he was away from, or out of the office, after he approved the pleading, he authorized and directed his paralegal to sign his name. This Court found that this conduct violated Rule 11, which provides that pleadings must be signed by an attorney of record. See *John Martin v. Automobili Lamborghini Exclusive, Inc., et a!*, case no. 98-6621-Civ-Dimitrouleaus, United States District Court, Southern District of Florida.

In *Kobleur v. Group Hospitalization and Medical Services, Inc.* 787 F.Supp. 1444 (S.D. Ga. 1991), the attorney of record did not sign several pleadings. Instead, a third party, whose name appeared to be A.M. Hodge signed the name of the attorney by signing the attorney*s name and appending "by A.M. Hodge" or "by AMH" to the signature. The court found that this substitute signature procedure violated Rule 11, Fed.R.Civ.P., which provides, "(e)very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney*s individual name, whose address shall be stated." The court found that this procedure was a clear violation of a simple rule. "Pleadings must be signed by an attorney of record in the case. Period. These pleadings were not." *Id at 1453.* The court fined the attorney and the person he authorized and directed to sign his name.

Rule 11 provides that an <u>unsigned</u> pleading is a nullity. A pleading signed by a person, who is not the attorney of record, is the same thing as an unsigned pleading. It is a nullity until a proper signature is affixed. Likewise, a wiretap authorization memorandum signed by a third party, who is not authorized to approve an application for a wiretap, is a nullity.

In conclusion, the *Laff* court opined that it was improper for a third party to sign for an authorized person. Courts have opined that a third party signing a routine civil pleading, with the attorney's approval and at the attorney's direction, is prohibited. The practice of a third party affixing a substitute signature on an official court related document is prohibited. An application authorizing a wiretap warrant can only be approved by a handful of people in Washington, D.C. Logically, one of these designated persons must personally affix their signature. Just like the court noted in *Laff,* a judge cannot delegate the task of signing a wiretap warrant. Thus, even if this Court opines that there is no fatal defect in the authorization process for the wiretap warrant, the application process for the wiretap warrant is fatally flawed. Any intercepted conversations and any derivative evidence must be suppressed.

## Other Investigative Techniques

Each application for a wiretap warrant must include , "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1). The face of the probable cause establishes doubt that a wiretap warrant was needed, because the government had informants inside the criminal operation.

### Failure to Comply With Minimization Requirements

Title 18 U.S.C. §2518(5) makes it clear that any order authorizing the interception of telephonic communications is qualified by the government's requirement to minimize the interception of those communications in the appropriate circumstances. Specifically, the government agents operating the intercept must conduct the interception in such a way as to minimize the interception of communications not otherwise subject to interception. In this regard, the government must demonstrate that the wire intercept was conducted in a manner that minimizes the interception of non-relevant telephone conversations . See e.g. *Scott v. United States,* 436 U.S. 128 (1978). The government does not have carte blanche to eavesdrop on all persons' conversations who use the targeted phone numbers.

### Conclusion

Mr. Rogers prays that the Court grant the relief requested.

>ALLEN S. KAUFMAN, P.A.
>2900 N. DIXIE HIGHWAY
>SUITE 201
>OAKLAND PARK, FL 33334
>(954) 563-6624
>FAX 954-563-6813
>e-mail   ask_pa@bellsouth.net
>
>
>By: Is/.I   Allen S. Kaufman
>     ALLEN S. KAUFMAN
>     FBN 301639

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the foregoing has been furnished this 20th day of July, 2004, to AUSA, Joseph Cooley, 99 NE 4th Street, Miami, FL, 33132 and counsel of record.

By: Is/.I   Allen S. Kaufman
ALLEN S. KAUFMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 04-20203-CR-MIDDLEBROOKS/BANDSTRA

UNITED STATES OF AMERICA,

v.

FABIAN CORRIETTE,

    Defendant.
_____/

### ORDER ON FABIAN CORRIETTE'S
### MOTION TO SUPPRESS WIRE COMMUNICATIONS

**THIS CAUSE** having come on to be considered on counsel for the defendant's Motion to Suppress Wire Communications, and the Court being advised in the premises, it is

**ORDERED AND ADJUDGED** that

**DONE AND ORDERED** in Chambers this _____ day of _____ 2004.

_____
U.S. DISTRICT COURT JUDGE